***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Stanback, along with the briefs and arguments on appeal. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 16 March 2004 as:
 STIPULATIONS
1. All parties are properly before the Court, and the Court has jurisdiction of the parties and of the subject matter;
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties;
3. The appointment of any party who appears in a representative capacity is valid and said party has duly qualified and has authority to appear in the capacity in which said party is designated, and no further proof of appointment or capacity shall be required;
4. The parties are subject to and bound by the North Carolina Workers' Compensation Act;
5. An employer/employee relationship existed between the Plaintiff/Employee and the Defendant/Employer as of April 3, 2000 and September 11, 2000;
6. Airco Home Comfort was insured under the provisions of the Act by Penn National Insurance Company on April 3, 2000;
7. Airco Home Comfort was insured under the provisions of the Act by Builders Mutual Insurance Company on September 11, 2000; and
8. Plaintiff's gross average weekly wage at the time of the initial injury was $780.00 yielding a compensation rate $519.95, subject to a Form 22.
The following exhibits were introduced at or following the hearing by agreement of the parties:
a. Stipulated Exhibit #1 — Calendar of days worked with Aardvark Duct Cleaning, Inc.;
b. Stipulated Exhibit #2 — Copies of Plaintiff's pay stubs from North Point Security;
c. Stipulated Exhibit #3 — Defendant Penn National's Responses to Plaintiff's Pre-Hearing Discovery;
d. Stipulated Exhibit #4 — Plaintiff's Responses to Defendant's Pre-Hearing Interrogatories and Request for Production of Documents;
e. Stipulated Exhibit #5 — Plaintiff's time sheets with Airco Home Comfort, Inc. from June 25, 2001 through August 6, 2001;
f. Stipulated Exhibit #6 — Payroll register from Airco Home Comfort from September 3, 2000 through September 30, 2000; and
g. Stipulated Exhibit #7 — Check/Direct Deposit Register from Airco Home Comfort, Inc. to Plaintiff dated September 15, 2000 through October 6, 2000.
 *********** FINDINGS OF FACT
1. On April 3, 2000, Plaintiff was employed by the Defendant-Employer as an installer of heating and air conditioning equipment, and had been so employed for approximately three years.
2. The plaintiff's job duties included installing heating and air conditioning equipment, oftentimes in either the attic or crawl spaces of customer homes. This position required heavy lifting, bending, and stooping.
3. On April 3, 2000 plaintiff, while working for defendant-employer, fell out of the attic of a customer's home while performing installation work. Plaintiff fell from a height of approximately ten feet and landed partly on the attic stairs. Plaintiff remained at the bottom of the attic stairs while he collected himself, and then was treated at Prime Care.
4. Plaintiff completed and filed a Form 18 — Notice ofInjury by Accident on or about May 18, 2000. Defendant-carrier Penn National, defendant-employer's workers' compensation insurance carrier on April 3, 2000 and accepted the injury as compensable on a Form 60 agreement. This accident is the subject of Industrial Commission File No. 026631.
5. Shortly after Plaintiff's April 3, 2000 fall, plaintiff was taken out of work and referred to Dr. J. M. McWhorten, as plaintiff was experiencing pain in his low back. Dr. McWhorten reviewed plaintiff's MRI, took him out of work for approximately one month, and continued the medications that had been prescribed by plaintiff's primary care physician. However, Dr. McWorten did not recommend physical therapy or offer plaintiff any other treatment.
6. On or about June 21, 2000, plaintiff again was seen for treatment by Dr. McWhorter, who noted some improvement. Plaintiff's back pain subsided while he was at rest and performing no work. Nevertheless, plaintiff had some days where his back pain would flare up and/or would cause him discomfort.
7. Plaintiff continued to receive treatment from Dr. McWhorter, or someone from his offices, throughout July and August, 2000. Plaintiff was initially given light duty work. Defendant-employer retrained him to be a service technician because plaintiff did not believe he could perform duct-cleaning work due to the bending and stooping involved. Plaintiff experienced some difficulty when he returned to work, and his pain symptoms increased while on light duty beginning in July of 2000.
8. Plaintiff was released from Dr. McWhorter's care in or around August, 2000. Plaintiff, while performing his job duties, would have flare ups and pain and continuously experienced other discomfort in his low back following April 3, 2000.
9. On or about September 11, 2000, plaintiff had a flare-up of his pain symptoms caused by his 3 April 2000 injury while installing a furnace in a customer's home. The September 11, 2000, incident was not a new injury by accident or specific traumatic incident. Plaintiff returned to Dr. McWhorter and was taken out of work for a brief period of time, but otherwise recovered from this flare-up. Plaintiff continued to have intermittent flare-ups and difficulty performing his job duties throughout late 2000 and into 2001. Plaintiff continued to work as a service technician throughout this time, but would occasionally receive varying lifting restrictions, depending on the degree to which his back pain persisted.
10. Plaintiff did not file a Form 18 Notice of Injuryby Accident for purposes of an alleged injury of September 11, 2000 until April 23, 2002, approximately one year and a half after the date of the alleged incident on September 11, 2000. This claim was assigned Industrial Commission File No. 239336. Plaintiff did not report an alleged new injury on or about September 11, 2000 to either the defendant-employer, or any of the treatment physicians who saw him following his treatment by Dr. McWhorter.
11. Plaintiff received temporary total disability benefits pursuant to Industrial Commission File No. 026631 for time out of work following his April 3, 2000 injury. Plaintiff also received medical compensation from Defendant Penn National immediately following his April 3, 2000 injury and continuing into late 2001.
12. Defendant Builders Mutual has paid no benefits to plaintiff.
13. Plaintiff missed approximately one week of work in early September 2000 as a result of his flare-up of back pain on or about September 11, 2000, but received his full wages from the defendant-employer, including compensation for tool usage.
14. The greater weight of the evidence is that plaintiff had a flare-up of his back pain on or about September 11, 2000 while installing a furnace, but that this flare-up was no different from similar pain symptoms he was experiencing since the April 3, 2000 admittedly compensable injury by accident for which defendant Penn National paid workers' compensation benefits. This flare-up was a continuation of his original condition from his compensable injury of April 3, 2000.
15. Plaintiff continued to receive treatment from Dr. McWhorter for some pain symptoms in his back throughout late 2000, and was ultimately referred by Defendant Penn National to Dr. Frank Rowan in January 2001. Defendant Penn National paid for plaintiff's treatment, both before and after September 2000, including any flare-ups in plaintiff's back pain arising out of his April 3, 2000 injury.
16. Plaintiff's medical condition improved with physical therapy and additional medications from Dr. Rowan throughout the spring of 2001 until such time that plaintiff was able to work consistently as a service technician for defendant-employer. Plaintiff's condition steadily improved following physical therapy and additional treatment from Dr. Rowan.
17. In May of 2001, plaintiff approached his supervisor, William S. Okey, and inquired about purchasing duct-cleaning equipment that defendant-employer was selling. Plaintiff negotiated terms and ultimately purchased the equipment with his wife to open a duct cleaning business. Although plaintiff negotiated the terms of the purchase, the equipment and business was placed in the name of his wife, Janet Wilson. Further, as Janet Wilson had no experience in the duct cleaning business, plaintiff trained his wife on the equipment; he operated the equipment himself and otherwise provided consulting services to his wife beginning in May 2001.
18. Plaintiff and his wife began operating the business in May 2001 and subsequently incorporated as Aardvark Duct Cleaning Incorporated in August 2001. Simultaneously, plaintiff continued to work with defendant-employer but scaled back his hours to be able to devote more attention to the family business, Aardvark Duct Cleaning, Inc.
19. Defendant-employer provided duct-cleaning jobs on a contractual basis to plaintiff and his wife throughout the summer of 2001 and into January 2002. Plaintiff and his wife actively worked in the duct cleaning business, advertised their services, and performed jobs through the summer of 2001.
20. Plaintiff began to experience increased pain in his back while working these two jobs, one with Defendant-Employer, and the other with Aardvark Duct Cleaning, Inc. Dr. Rowan expressed some concerns that plaintiff was working too many hours; however, Dr. Rowan was unaware that plaintiff was working two jobs throughout this period of time.
21. On August 5 or 6, 2001, Plaintiff voluntarily severed the employment relationship with defendant-employer. At that time, plaintiff immediately devoted his time, labor and skills in the HVAC field to Aardvark Duct Cleaning, Inc.
22. Plaintiff continued to treat with Dr. Rowan after August 6, 2001, while continuing to work for Aardvark Duct Cleaning, Inc. Dr. Rowan continued to express concerns that plaintiff was working too much for defendant-employer, and was not aware that plaintiff had left the employment of Airco Home Comfort, Inc.
23. While working solely in the duct cleaning business with Aardvark, plaintiff would perform duties including lifting objects weighing in excess of 100 pounds, together with continual bending, stooping, and climbing.
24. Beginning August 6, 2001, plaintiff was capable of full-time work as a duct cleaner with Aardvark Duct Cleaning, Inc., and was capable of earning wages comparable to and/or greater than that which he was earning while working for defendant-employer.
25. Plaintiff was ultimately released from Dr. Rowan's care with a permanent partial disability rating of five percent (5%) to his back. Plaintiff obtained a second opinion rating of twenty percent (20%) from Dr. Stephen Furr. As one of plaintiff's regular treating physicians with a longer period of treatment and greater familiarity with the plaintiff and his medical condition, greater weight is assigned to Dr. Rowan's disability rating.
26. The plaintiff's average weekly wage listed on the Form 60 is $500.00. The parties now stipulate, however, that the plaintiff's weekly compensation rate is $519.95.
 ***********
The forgoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident or specific traumatic incident to his back arising out of and in the course of his employment with defendant-employer on April 3, 2000. N.C. Gen. Stat. §97-2(6).
2. Plaintiff did not sustain an injury by accident or specific traumatic incident to his back arising out of and in the course of his employment with defendant-employer on September 11, 2000. N.C. Gen. Stat. § 97-2(6).
3. Following plaintiff's return to work as a service technician in July 2000, plaintiff suffered no "disability" as defined by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(9).
4. Plaintiff is entitled to compensation for all medical expenses incurred or to be incurred as a result of plaintiff's April 3, 2000 injury. N.C. Gen. Stat. §97-25.
5. Plaintiff is entitled to permanent partial disability benefits for the five percent (5%) disability to his back that resulted from his compensable injury of April 3, 2000. N.C. Gen. Stat. § 97-31.
6. Because plaintiff did not have a compensable injury on or about September 11, 2000, plaintiff is entitled to no benefits from defendant Builder's Mutual. N.C. Gen. Stat. § 97-2(6).
7. Given the discrepancy in plaintiff's compensation rate as listed on the Form 60 as compared with the current stipulation; plaintiff is entitled to any underpayment during his periods of temporary total disability.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits pursuant to the claim identified by Industrial Commission File No. 239336 is hereby DENIED.
2. Subject to attorney fees approved herein, and based upon the five percent (5%) rating to plaintiff's back assigned by Dr. Rowan as a result of plaintiff's compensable injury of April 3, 2000 (Industrial Commission File No. 026631), defendant Penn National shall pay permanent partial disability compensation to the Plaintiff at the rate of $519.95 per week for 15 weeks. All amounts that have accrued shall be paid in one lump sum, subject to the attorney's fee approved below.
3. Defendants shall pay for all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury of April 3, 2000 (Industrial Commission File No. 026631) to the extent that such examinations, evaluations, and treatments are reasonably required to affect a cure, provide relief and/or lessen the period of disability.
4. Plaintiff is entitled to the underpayment, if any, of his compensation benefits during his period of temporary total disability. Plaintiff is entitled to a weekly compensation rate of $519.95 for this period.
5. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the sums due plaintiff in Paragraphs 2 and 4 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the compensation due plaintiff shall be deducted from said sums and paid directly to plaintiff's counsel.
6. Defendant Penn National shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER